741 A.2d 1227 (1999)
B.A. and A.A., Appellants,
v.
E.E., A Minor, by and through Her Parents and Natural Guardians, C.E. and D.E.
v.
D. and C., proposed adoptive parents, Appellees.
Supreme Court of Pennsylvania.
Argued March 8, 1999.
Decided November 24, 1999.
Reargument Denied January 6, 2000.
*1228 Mary E. Schellhammer, Southern Allegheny Legal Aid, Johnstown, for B.A. & A.A.
Linda Rovder Fleming, Johnstown, for D. & C.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

OPINION OF THE COURT
FLAHERTY, Chief Justice.
The issue raised in this case is whether prospective adoptive parents, who have had the child in their care and custody for nine or ten months following her birth, may intervene in a custody proceeding brought by the child's natural father, who is seeking custody of the child, when the natural mother has placed the child in the prospective adoptive parents' custody and favors their adoption of the child.
The child, M, was born out of wedlock on January 4, 1996. Her parents, E and A, were school children aged sixteen and eighteen respectively, living with their parents. During the later stages of her pregnancy, E took up residence in Genesis House in Pittsburgh, a facility which is operated by Genesis of Pittsburgh, an adoption agency for women who intend to place their child for adoption. The day after the child was born, E executed a document granting custody of the child to Genesis and allowed it to seek adoptive parents for the child. Genesis immediately placed the child with D and C, the prospective adoptive parents. The child has remained with these prospective adoptive parents since that time. E executed a consent to the adoption and a similar consent was forwarded to A, who refused to consent.
D and C initiated an adoption proceeding, the status of which is currently uncertain, and on February 26, 1996, A and his mother filed a complaint for primary physical custody. D and C filed a motion to intervene, and on July 9, 1996, the trial court granted their motion on the grounds that they stood in loco parentis to the child. The trial court heard testimony on the issue of custody, and on November 13, 1996 awarded primary physical custody to D and C. A and his mother appealed.
Superior Court affirmed, holding that the natural mother's decision to grant custody to the Genesis agency, who in turn granted it to D and C, conferred upon D and C in loco parentis status, and that considering the child's physical, intellectual, moral and spiritual well-being, the trial court did not err in awarding custody to D and C.
The issue in this appeal from the decision of Superior Court is whether it was error to allow the prospective adoptive parents the right to intervene by conferring upon them in loco parentis status. Normally, a third party may challenge custody only through dependency proceedings. The Juvenile Act, which governs dependency proceedings, defines a dependent child, inter alia, as "A child who is *1229 without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." 42 Pa.C.S. § 6302. In other words, in order for a third party to interfere in a natural parent's custody of his child, the third party would have to show in a dependency proceeding that the child is not properly cared for. If the third party were able to prevail on that issue, then the third party could intervene in a custody proceeding. As Superior Court stated in Cardamone v. Elshoff, 442 Pa.Super. 263, 659 A.2d 575 (1995): "[U]nless the natural parents' prima facie right to custody is successfully overcome via the dependency proceedings, this court cannot confer standing upon third parties to interfere with the parent child relationship." 659 A.2d at 581.[1]
An exception to this rule is that where the third parties stand in loco parentis, i.e., where the third parties have "assumed obligations incident to the parental relationship," id., the third party may intervene in a custody proceeding. However, "a third party cannot place himself in loco parentis in defiance of the parents' wishes and the parent/child relationship." Gradwell v. Strausser, 416 Pa.Super. 118, 610 A.2d 999, 1003 (1992).
The record in this case establishes that A attempted to gain custody of his child from shortly after the child was born until the present. He opposes the adoption and he seeks custody of the child himself. It is plain that D and C retain custody of his child in defiance of his wishes. The lower courts were in error, therefore, in conferring standing upon the prospective adoptive parents.
The order of the Superior Court is reversed and the trial court's order granting custody to D and C is vacated. The case is remanded for a hearing on the custody petition filed by A and his mother.
Justice NIGRO files a concurring opinion, joined by Justice SAYLOR, who also joins the majority opinion.
Justice ZAPPALA files a dissenting opinion.
Justice NEWMAN files a dissenting opinion that is joined by Justice CASTILLE.
Justice NIGRO, concurring.
I concur with the Majority Opinion as I agree that D. and C. did not achieve in loco parentis status and therefore lack standing to contest the natural father's custody petition. I write separately merely *1230 to clarify how they fell short of the mark to achieve such status.
We granted allocatur in this case on the limited issue as to whether third parties can attain in loco parentis status in custody proceedings when one parent contests the third party's adoption of his child.
It is well settled that
[t]he phrase "in loco parentis" refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of a parental status, and, second, the discharge of parental duties.
Gradwell v. Strausser, 416 Pa.Super. 118, 125, 610 A.2d 999, 1003 (1992) (quoting Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968)). Thus, the third party seeking to establish in loco parentis status must both assume parental status and discharge parental duties. A third party, however, cannot unilaterally assume parental status where the natural parents defy such intervention.
Here, the natural mother defied the express wishes of the natural father by giving custody of the baby and consent to place her for adoption to Genesis, an adoption agency. Genesis, in turn, matched the baby to prospective adoptive parents D. and C. and gave immediate physical custody to them. Without the natural father's consent, I find that neither Genesis nor D. and C. had the proper authority to assume the role of parent. The stakes are simply too high and the rights of the non-consenting parent too substantial to allow one parent to confer in loco parentis status on a third party. D. and C. therefore, fail to meet the first prong of in loco parentis status, since they assumed the role of parent in defiance of the natural father.
Since D. and C. gained physical custody of M based on the adoption consent form signed only by the baby's mother and in direct defiance of the baby's father they did not validly assume parental status and they therefore did not have standing to contest the natural father's petition for custody.[1]
Justice SAYLOR joins in the Concurring Opinion.
Justice ZAPPALA, dissenting.
I dissent and would hold that under the circumstances of this case, where the natural father is aware of the natural mother's placement of the child for adoption and the prospective adoptive parents in fact assumed primary parenting responsibility, the prospective adoptive parents stand in loco parentis to the child and have standing to intervene in the custody action brought by the child's natural father.
In holding to the contrary, the majority relies solely upon Gradwell v. Strausser, 416 Pa.Super. 118, 610 A.2d 999 (1992). In Gradwell, the paternal grandfather of the child contended that pursuant to section 5313 of the Domestic Relations Code,[1] he had standing to file a custody action against the child's natural parents. The grandfather had resided with the child and her parents for almost two years and resided with the child without her parents *1231 for a period of two months. The child, who was fifteen years old at the time of the proceeding, indicated to the court that she preferred to live with her grandparents.
The trial court dismissed the custody action and the Superior Court affirmed. The court emphasized that section 5313 did not provide a presumption of in loco parentis status for grandparents, but rather was intended to assure continuing contact of the child with the grandparent when a parent is deceased, divorced or separated. See 23 Pa.C.S. § 5301. The court recognized that it had no power to order grandparent visitation where both parents were alive, reside together with the child, and object to visitation.
The court stated:
Without more, a child's preference and the fact that the child and grandparent resided together for a period of time is insufficient to support a finding that [the grandparent] stood in loco parentis and has overcome the parents' prima facie right to custody. A third party cannot place himself in loco parentis status in defiance of the parents' wishes and the parent/child relationship.
610 A.2d at 1003.
Unlike Gradwell, the instant case does not involve a third party's challenge to the custody of a child in an intact family. Here, the party asserting in loco parentis status was given specific authority to parent the child by one of the natural parents. Although the natural father's subsequent opposition to the adoption can not be ignored, it also can not undo the facts that have occurred. Simply put, the prospective adoptive parents have "assumed parental status" and have "discharged parental duties." Accordingly, they stand in loco parentis to the child and have standing to intervene in the custody proceeding.[2]
Justice NEWMAN, dissenting.
The essential concern in this case is whether D and C are in loco parentis to the child M and I respectfully dissent because I believe they are clearly in this position here. D and C assumed a parental role towards the child, had a legitimate expectation that this child was part of their family unit, and did not assume the status of "in loco parentis" in defiance of A's wishes, as the Majority concludes. Thus, they had a right to be heard in any legal proceeding that affects that relationship.
The phrase "in loco parentis" refers to a person who puts himself in the situation of lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.
Commonwealth ex rel. Morgan v. Smith, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). See also Commonwealth v. Gerstner, 540 Pa. 116, 656 A.2d 108, 111-113 (1995) for a discussion of "in loco parentis."
In determining if an individual has assumed a parental role towards a child in defiance of a parent's wishes, we should view the facts during the period that the surrogate parents undertake the responsibility, not months later when a biologic parent changes his or her mind. Here, at the relevant time, D and C acted "in loco parentis" and it was not contrary to the *1232 wishes of A. At no time during E's pregnancy did A express a definite intent to assert custody of the child, nor did he provide financial support to E. Instead, he silently stood by and allowed E to take sole responsibility for the financial and emotional burden of pregnancy and he made no objection to E's stated intention to give the child to D and C for adoption. The record clearly indicates that A was well aware that E meant to place the child for adoption and that she had made plans to give birth in an institution that would facilitate the adoption. He still did not act, and was not even present when the child was born.
E consented to the child's adoption and transferred her parental obligations to D and C so that they could adopt the child. A, by his silence and his utter failure to undertake any responsibility, financially or otherwise, acquiesced in this decision. His neglect in not asserting his parental rights while he was aware that E had specifically requested that others assume parental duties amply shows that D and C's role was not against A's wishes. I believe that in order to prevent D and C from assuming in loco parentis status to his child, A was required to file a petition for custody, or in some other meaningful way assert his parental rights, before the child was born and placed with the prospective adoptive parents. He failed to do so and cannot now claim that D and C retain in loco parentis status against his wishes.
Additionally, I differ from the Majority because I do not believe that these prospective adoptive parents, to properly intervene into the custody action between the biological parents, must first show that the child, who is in their care, is a "dependent" child per the Juvenile Act, 42 Pa. C.S.A. § 6302. Instead, if prospective adoptive parents have a direct, substantial and legitimate interest in the welfare of a child in their care, they should have standing to intervene in a custody action governing that child. A meaningful custody determination should not be made without the input of all relevant factors, which necessarily includes details of the child's current custody arrangements. Here, I believe D and C have an unquestionable interest in the welfare of M and thus have standing to intervene into a proceeding that impacts their relationship with her. They became interested parties by virtue of their de facto assumption of parental duties for this child and because the Mother had signed over her parenting responsibilities to them. In essence, D and C stood in the Mother's shoes and assumed her parenting responsibilities. They correspondingly should be allowed to have some role in a legal determination that involves this relationship.
As I stated in my Opinion in Support of Reversal In Re G.C., 558 Pa. 116, 735 A.2d 1226 (1999) (hereinafter "GC"), individuals "who have cared for and nurtured a child... in essence acting as de facto parents, have a direct, substantial and immediate interest in the [child]." Id. at 1233. Moreover, it appears plain enough to me that in the instant matter a meaningful custody disposition could not have been made without the input of D and C because only they could provide necessary information about M in view of the fact that they had the day to day parenting responsibilities for the child. Prospective adoptive and foster parents who have physical custody of a child hold valuable information concerning the best interests of the child and these parents should have a right to be heard in order to contest any disposition that could transfer the child from their care. Id. The appropriateness of removing a child from adults who are raising the child in their home, whether in a foster care, prospective adoptive or some other parenting arrangement, should be made only after gathering all relevant information about the child and by hearing from all parties involved, including foster and prospective adoptive parents.
I continue to agree with the language I stated in GC:
It is in the best interests of the child involved that all parties who have an interest in his welfare be heard by [the *1233 court.] .... The combined effort of all interested parties, whether they be the agency, the extended family or foster parents, is essential to decide what custody arrangement is best.
Id. at 1237. Akin to GC, to deny standing to persons who have assumed the role of de facto parent to a child "discounts the inevitable emotional bond that develops between a family and a child." Id.
Nothing could be more cruel than the forceable separation of a child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection; to a child it is equally cruel whether the separation is brought about by `kidnapping' or by legal process. In passing on the contested custody of children no judge can do justice without considering the human aspect of his problem.
Commonwealth ex rel. Children's Aid Society v. Gard, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949).
We also should be mindful that M, the subject of the custody determination, was in the physical custody of individuals who fully expected to adopt this child as their own and had already formed a psychological bond to her as part of their lives. Resembling the foster parents at issue in GC, these prospective adoptive parents have a real interest in the child's welfare, and in fact may have a limited liberty interest in that parent-child relationship. See GC, 735 A.2d at 1233, citing Smith v. Organization of Foster Families For Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). I do not think it would be proper to rip apart this family unit without allowing D and C to participate in the relevant legal proceedings. D and C have a right to be heard because the ultimate result of the legal action substantially impacts upon their family, either by allowing them to retain physical custody of M or by forcing them to relinquish custody of this little girl that they altogether and reasonably expected to adopt and to make a member of their permanent family.
For these reasons, I would affirm the decision of the trial court to allow D and C to intervene in this action. See also Silfies v. Webster, 713 A.2d 639 (Pa.Super.1998)(holding that party standing in loco parentis has standing to seek custody of child); In Re: Griffin, 456 Pa.Super. 440, 690 A.2d 1192 (1997), appeal denied, 549 Pa. 701, 700 A.2d 441 (1997)(deciding that prospective adoptive parents who cared for the child had standing to challenge custody determination in juvenile court); Mollander v. Chiodo, 450 Pa.Super. 247, 675 A.2d 753 (1996)(finding that prospective adoptive parents stood in loco parentis to child where mother signed consent to adoptionprospective adoptive parents did not lose this status simply because mother revoked consent at a later date.) Cardamone v. Elshoff, 442 Pa.Super. 263, 659 A.2d 575 (1995) (maternal aunt who at time of custody petition involving biologic mother had physical custody of child for some twenty-eight months was "in loco parentis" to child); Rosado v. Diaz, 425 Pa.Super. 155, 624 A.2d 193 (1993)(holding that stepmother could stand in loco parentis to child, and thus assert custody action against biologic mother if stepmother could show that she had sole custody of child).
I would also affirm the decision to grant continued custody of the child to D and C because the trial court made a thorough and well-supported determination that the child's physical, intellectual, moral and spiritual well-being would best be suited by remaining in their custody. I come to this conclusion completely aware that at the time this matter was before the trial court, there was a presumption that a biological parent had a prima facie right to custody as against third parties such as D and C. Rowles v. Rowles, 542 Pa. 443, 668 A.2d 126 (1995); J.A.L. v. E.P.H., 453 Pa.Super. 78, 682 A.2d 1314, 1318 (1996). However, this presumption does not mean that an interested party may never obtain primary custody of a child compared with the biological parent. Instead, this presumptive right to custody has the effect of *1234 increasing the evidentiary burden on the nonbiological parent seeking custody. I believe that the trial court correctly determined that D and C met this burden.
Accordingly, I dissent.
Justice CASTILLE joins this dissenting opinion.
NOTES
[1] In Rowles v. Rowles, 542 Pa. 443, 668 A.2d 126 (1995) a plurality of this court would have abandoned the presumption that parents have a right to custody of their children as against third parties. In its place, the plurality suggested "weighing parenthood as a strong factor for consideration." 668 A.2d at 128. In suggesting this change in terminology from "presumption" to "weighing parenthood as a strong factor," however, the plurality observed:

In Ellerbe [v. Hooks, 490 Pa. 363, 416 A.2d 512 (Pa.1980)], both opinions, representing all seven justices, agreed on several principles: "the parent-child relationship should be considered to be of importance in determining which custody arrangement is in the child's best interest," "special weight" and "deference" should be accorded the parent-child relationship, and the relationship should not be disturbed "without some showing of harm" or unless circumstances "clearly indicate the appropriateness of awarding custody to a non-parent." Id., 490 Pa. at 366, 369, 370, 373, 416 A.2d at 513, 514, 515, 516-17. We adhere to these principles, for, in general, parents have a deep, abiding commitment to the well-being of their children.
668 A.2d at 128 (emphasis added). Because the Rowles opinion did not command a majority of the court, the presumption that parents have a right to the custody of their children as against third parties remains in effect. Whether the parents' interest in their children is referred to as a presumption or as a factor to be weighed, however, the main idea is that parents are to receive special consideration: as the court put it in Ellerbe, special weight and deference should be accorded the parent-child relationship.
[1] While I favor in loco parentis status for foster parents to aid the court in determining the best interests of the child, see In the Interest of G.C., 735 A.2d 1226 (Pa.1999) (Nigro, J., Opinion in Support of Reversal), it is in large part because the placement with the foster parents results from a legal determination that the natural parents are unable to provide for the child's welfare. When M. was placed with D. and C., there was no such determination made.
[1] Section 5313 provides:

If an unmarried child has resided with his grandparents or great grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.
23 Pa.C.S. § 5313.
[2] In the Opinion in Support of Affirmance in In the Interest of G.C., 735 A.2d 1226, 1999 Pa. Lexis 2246 (1999), I opined that foster parents lack standing to seek or contest awards of custody concerning their foster children. This conclusion was based on the fact that, pursuant to the controlling statutory scheme, the foster parent/child relationship is temporary in nature. See 42 Pa.C.S. § 6351(a)(2). To the contrary, the instant case involves prospective adoptive parents, whose role is distinct from that of a foster parent. See Mitch v. Children and Youth S.S. Agency, 383 Pa.Super. 42, 556 A.2d 419 (1989) (sufficient distinctions exist between prospective adoptive parents and foster parents to afford the former standing to seek judicial review of an agency's decision regarding custody).