J-S01016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TIMOTHY WELLS AND LORINE WELLS | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| v. | :<br>:<br>: |
| BRANDON WELLS | :<br>: No. 844 WDA 2022<br>: |
| v. | :<br>:<br>: |
| DANIELLE WALTERS | :<br>:<br>: |
| APPEAL OF: BRANDON WELLS | : |

Appeal from the Order Entered June 27, 2022,
in the Court of Common Pleas of Venango County,
Civil Division at No(s): No. 2022-00267.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:         **FILED: MARCH 27, 2023**

Brandon Wells (Father), *pro se*, appeals the order granting the request
of Danielle Walters (Maternal Aunt) to intervene in the custody matter
between Father and Paternal Grandparents, Timothy and Lorine Wells. This
custody case, involving Father's two children, began after Father's arrest for
the murder of Bierlie Walters (Mother). On appeal, Father argues the Venango

_____

[*] Retired Senior Judge assigned to the Superior Court.

County Court of Common Pleas erred when it determined Maternal Aunt had *in loco parentis* standing. After review, we quash.

Given our disposition, we abbreviate the factual and procedural history as follows: The Children at the center of this case are Father's three-year-old son and two-year-old daughter. In March 2022, Father was arrested for his alleged murder of Mother. Father was charged with, **inter alia,** first-degree murder,[1] drug delivery resulting in death,[2] and three counts of endangering the welfare of a child.[3] Venango County Children and Youth Services (CYS) obtained an emergency order and placed the Children with Maternal Aunt.[4]

In April 2022, Paternal Grandparents and Father entered into a custody stipulation, which resulted in an order granting custody to the Paternal Grandparents. The court issued this order notwithstanding the existence of the juvenile court order placing the Children with Maternal Aunt. In May 2022,

_____

[1] 18 Pa.C.S.A. § 2502(a)
[2] 18 Pa.C.S.A. § 2606(a)
[3] 18 Pa.C.S.A. § 4303(a)(1).

Presumably, the three separate endangerment charges relate to Mother's three children: the two subject children; and a third child, O.W., who was Mother's daughter from a previous relationship. O.W. now resides with Maternal Aunt. O.W. has no blood relationship to Father, and she is not a subject of these proceedings.

[4] The placement was designated as a kinship placement. Maternal Aunt is the spouse of Mother's brother, Maternal Uncle. At the time of the proceedings, Maternal Aunt and Maternal Uncle were separated, but co-parenting.

Maternal Aunt sought to intervene in the ongoing custody case involving Paternal Grandparents and Father.[5]

On June 16, 2022, the trial court held a hearing on Maternal Aunt's petition. The trial court granted Maternal Aunt's request after concluding that Maternal Aunt had standing to seek any form of custody under Section 5424(2) of the Child Custody Act. *See* Findings of Fact and Order of Court, dated 6/16/22 and entered 6/17/22; *see also* 23 Pa.C.S.A. § 5324(2) (providing standing to "[a] person who stands *in loco parentis* to the child."). In its findings, the trial court distinguished the instant case from our Supreme

_____

[5] The record before us suggests that the court was at odds with itself, by virtue of the competing orders addressing custody. One order, out of juvenile court, granted legal custody to CYS and placed the Children with Maternal Aunt. The other order – *i.e.*, the custody stipulation filed in family court – granting custody to the Paternal Grandparents.

The dependency records were not transmitted with the custody record. Without those records, we cannot ascertain precisely when or how the Children were placed with Maternal Aunt; we cannot tell whether the juvenile court adjudicated the Children dependent, or whether the Paternal Grandparents sought to intervene in the dependency proceedings. Moreover, we cannot discern why the parties, the court, and evidently CYS, chose to proceed in family court, as opposed to dependency court. Father alleges in his *pro se* Brief that CYS took the position that the Paternal Grandparents should have custody. But we cannot determine the veracity of this allegation.

In any event, the custody proceedings took precedence over the dependency proceedings after the court's July 1, 2022 orders, which terminated juvenile court supervision (discussed *infra*).

Despite the absence of the dependency records, our review of Father's appeal is not impeded. None of the parties raised any issues with the dual proceedings. In fact, CYS advised this Court that it was not submitting an appellate brief because it was "not an active participate in this [custody] proceeding" and that the Children "are no longer dependent with our agency."

Court's Opinion In Support of Affirmance, *In re G.C.*, 735 A.2d 1226 (Pa. 1999), which affirmed this Court's decision that foster parents lacked *in loco parentis* standing to contest awards of custody concerning their foster children. Here, the trial court concluded that, for purposes of an *in loco parentis* analysis, there was a substantive distinction between foster parents and kinship placements.[6] **See** Findings of Fact and Order of Court, at 5-6.

On June 16, 2022, the same day that the court granted Maternal Aunt's petition to intervene, the Paternal Grandparents, Maternal Aunt, and Father reached a custody agreement. The parties agreed that Maternal Aunt and Paternal Grandparents would share physical custody, so long as the Paternal Grandparents remained in Pennsylvania; otherwise, Maternal Aunt would have primary physical custody.[7] The parties further agreed that Maternal Aunt and the Paternal Grandparents would share legal custody. The trial court memorialized the agreed upon arrangement in its Custody Order, dated June 16, 2022.

_____

[6] "Kin" is defined as "[a]n individual 21 years of age or older who is one of the following: […] (3) An individual with a significant, positive relationship with the child or the family." 67 Pa.C.S.A. § 7502 (Definitions); **cf.** 67 Pa.C.S.A. § 3102 (Definitions) (repealed January 3, 2023). A "foster parent" is defined as "[a]n individual approved by a public or private foster care agency to provide foster family care services to a child who is temporarily separated from the child's legal family and placed in the legal custody of an agency." 67 Pa.C.S.A. § 7502.

[7] Paternal Grandparents reside in Idaho but are living in Pennsylvania while Father's criminal trial is pending.

Following the entry of this consented to custody order, the juvenile court issued orders closing the respective dependency cases and terminating CYS involvement. *See* Orders of Court, dated 7/1/22. In its orders terminating juvenile court supervision, the court stated that the Children were not dependent, because Maternal Aunt and Paternal Grandparents obtained custody by virtue of the June 16, 2022 order. *Id.*

Father filed this appeal challenging the order that granted Maternal Aunt's request to intervene. However, Father did not appeal the custody order. In his *pro se* Brief, Father raises five issues. He claims the trial court erred or abused its discretion for the following reasons:

1. By not properly considering standing under the Juvenile Act, 42 Pa.C.S.A. §§ 6301, 6336.1.

2. In finding that [Maternal Aunt] had *in loco parentis* status under 23 Pa.C.S.A. § 5324(2).

3. In finding that [Maternal Aunt] had standing to intervene in the custody case under 23 Pa.C.S.A. § 5324(4), which is subject to 23 Pa.C.S.A. § 5324(5).

4. By granting [Maternal Aunt] standing to intervene in the custody case. Standing in child custody cases is a matter of constitutional significance. As our Supreme Court has emphasized, "the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the "due process clause" of the Fourteenth Amendment.

5. By considering kinship care as separate and unrelated to foster care.

Father's Brief 2-4.

At the outset, we observe the effects that Father's pending criminal case has on this custody matter. The Child Custody Act provide, "[n]o court shall award custody, partial custody or supervised physical custody to a parent who has been convicted of murder under 18 Pa.C.S.A. § 2502(a) (relating to murder) of the other parent of the child who is the subject of the order unless the child is of suitable age and consents to the order." 23 Pa.C.S.A. § 5329(b). Because Father has not been convicted, or pleaded guilty or pleaded no contest to the pending murder charge, Section 5329(b) does not deprive Father of asserting his custody rights.

Turning to the issue of Maternal Aunt's *in loco parentis* status, we acknowledge that the Child Custody Act generally does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents. **See** 23 Pa.C.S.A. §§ 5324(3), 5325 ("Standing for partial physical custody and supervised physical custody."). A third person who stands *in loco parentis* may also seek custody. **See** 23 Pa.C.S.A. § 5324(2).

"The term *in loco parentis* literally means 'in the place of a parent.'" **Raymond v. Raymond**, 279 A.3d 620, 627 (Pa. Super. 2022); **K.W. v. S.L.**, 157 A.3d 498, 504-05 (Pa. Super. 2017) (citing Black's Law Dictionary, 791 (7th Ed. 1991)) (further citation omitted). A person stands *in loco parentis* with respect to a child when he or she "assumes the obligations incident to the parental relationship without going through the formality of a legal

adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." ***K.W.***, 157 A.3d at 505 (citation omitted).

In 2018, the Child Custody Act was amended to grant standing to another class of individuals. ***See*** 23 Pa.C.S.A. § 5324(4). Section 5324(4) permits any individual to file for any form of physical or legal custody, so long as the individual meets certain criteria by clear and convincing evidence. However, Section 5324(4) will not apply if, ***inter alia,*** a dependency proceeding involving the child has been initiated or is ongoing. 23 Pa.C.S.A. § 5324(5)(i).

The more salient portion of Father's appeal includes the argument that Maternal Aunt could not have obtained standing under either Section 5324(2) or 5324(4). Father maintains that Maternal Aunt could not have obtained *in loco parentis* status under Section 5324(2), because the law does not bestow such status to individuals who receive custody as part of a foster care placement ***or*** a kinship placement. ***See*** Father's Brief at 5 (citing ***In re G.C.***, ***supra***). Moreover, Father argues that Maternal Aunt could not have obtained standing under Section 5324(4), because under Section 5324(5)(i), a dependency proceeding had been initiated. Although the court ultimately terminated the dependency proceedings, it did so after – and indeed, because of – the June 16, 2022 custody order. ***See*** Orders of Court, dated 7/1/22.

Ultimately, however, we do not reach Father's challenges on standing, nor do we review whether the trial court erred when it concluded that kinship

caregivers are distinguishable from foster parents in an *in loco parentis* analysis. Although Father initially contested Maternal Aunt's intervention in the custody case, Father then consented to Maternal Aunt sharing custody of the Children with Paternal Grandparents.[8] We have long held, "[a] party who has acquiesced in an order or judgment will not later be heard to challenge it." **Karkaria v. Karkaria**, 592 A.2d 64, 71 (Pa. Super. 1991) (citing **Brown v. Commonwealth, Department of Health**, 434 A.2d 1179 (Pa. 1981) ("Ordinarily, a party who consents to, or acquiesces in, a judgment or order cannot appeal therefrom.")). By consenting to – or, at the very least, acquiescing to – Maternal Aunt having custody of the Children, Father has also acquiesced to her standing, and thus he cannot challenge it on appeal.[9] Had Father intended to preserve the standing issue, he should not have consented to Maternal Aunt having custody; alternatively, he could have consented to custody but he also had to specifically preserve the right to challenge standing on appeal. That was not done here.

_____

[8] It bears mentioning that Paternal Grandparents, who were parties to both the petition to intervene as well as the ensuing custody agreement, did not appeal.

[9] Importantly, we note that the trial court stated in its June 16, 2022 custody order: "But for one (1) request, Father does not object to [the custody] agreement. The court will cover that request later in this order." **See** Custody Order, dated 6/16/22, at 1. Upon review of that document, the basis of Father's objection is not apparent. Nevertheless, our analysis does not change. Whatever reservation Father had with the custody order, he did not appeal that order or even raise that issue in this appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2023