J-A20010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.R.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L. AND M.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 200 WDA 2021 |

Appeal from the Order Entered January 12, 2021
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s): 2018-00064-A

| | | |
|---|---|---|
| IN RE: J.R.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.L. AND M.L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 201 WDA 2021 |

Appeal from the Order Entered January 12, 2021
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s): 2017-00217-A

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:  **FILED:  October 15, 2021**

In this matter we are called upon to assess the propriety of the trial court's conclusion that S.L. and M.L. ("Husband" and "Wife," collectively "Appellants") lack standing to proceed with their petitions attempting to

involuntarily terminate the parental rights of D.L. ("Mother") to her son, J.R.L ("Child"). We affirm.[1]

This case began with the birth of Child in September 2011. At the time, Mother was incarcerated and, through a program with her prison, executed a written agreement to allow Appellants to care for Child until Mother's release. Mother was released from prison in September 2013 and retrieved Child. At some point thereafter, Mother returned to incarceration and Child was left in the care of Mother's family members. The trial court found that approximately two and one-half years later, while Mother was incarcerated, maternal grandmother contacted Appellants and asked them to "take care" of Child. On April 26, 2017, upon her release from prison, Mother went to Appellants' home seeking the return of Child to her custody. However, Mother's attempt was unsuccessful.

On April 20, 2017, six days before Mother was released, Appellants filed a petition seeking the involuntary termination of Mother's parental rights to Child, which received trial court docket number 2017-217A.[2] On September

---

[1] The trial court stated on the record "that on October 9, 2020 [Appellants'] counsel was directed to file a petition adding biological father, which has not occurred, and the father is not a party to the involuntary termination petition before this [c]ourt." N.T., 1/8/21, at 114.

[2] On April 28, 2017, Appellants filed an emergency custody petition, which was granted that day. The order was ultimately vacated on January 30, 2018, and Appellants relinquished custody of Child. Thereafter, Mother moved with

28, 2017, the trial court entered an order denying Appellants' petition to terminate parental rights. Appellants filed a timely appeal, which this Court docketed at 1630 WDA 2017.

While that appeal was pending, on January 26, 2018, Appellants filed a second petition seeking involuntary termination of Mother's parental rights and a report of intent to adopt at trial court docket number 2018-64A. The trial court denied that petition on February 6, 2018, and Appellants timely appealed from that order. We docketed the appeal at 287 WDA 2018.

In two separate decisions, this Court concluded the trial court had erred in failing to appoint counsel to represent Child during these proceedings. We therefore remanded for the appointment of legal counsel to Child and for an "evidentiary hearing to determine whether Appellants stand *in loco parentis* under 23 Pa.C.S.A. § 2512(a)(3) to file a petition to terminate [Mother's] parental rights." ***In the Matter of the Adoption of J.R.L.***, 287 WDA 2018, at *2 (Pa. Super., filed 7/24/2018) (unpublished judgment order). The trial court appointed counsel to Child and held a hearing on January 8, 2021, and on January 12, 2021, entered orders at each docket number determining that

_____

Child to Monroe County, where they resided with maternal grandparents. Mother continued to have periods of incarceration, and maternal grandparents sought the involvement of Monroe County Children and Youth Services ("CYS"). CYS filed a dependency petition, and Child was found to be dependent by Court order of October 31, 2018. Child remains in placement with CYS and is thriving with his current foster family.

- 3 -

Appellants lacked standing. Appellants filed the instant timely appeals at both docket numbers, which this Court consolidated *sua sponte*.

Initially, Appellants argue they have standing to seek termination of Mother's parental rights because Mother failed to timely object to their standing. Appellants contend that Mother should have challenged their standing by way of a timely filed preliminary objection.[3]

Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In addition, it is an appellant's obligation to demonstrate which appellate issues were preserved for review. **See** Pa.R.A.P. 2117(c), 2119(e). Appellants have failed to specify where their issue of Mother's waiver as to standing was first presented to the trial court. Further, Appellants have not alleged that they raised the issue of waiver in their initial appeal to this Court.

Moreover, "[o]n remand of the record the court ... below shall proceed in accordance with the judgment or other order of the appellate court[.]" Pa.R.A.P. 2591. Pursuant to our remand directive, the trial court's actions were limited to a determination of Appellants' standing to file a termination petition. As previously indicated, we specifically instructed that the trial court

---

[3] We note that at the evidentiary hearing the trial court expressed the issue of standing had been raised *sua sponte*. N.T., 1/8/21, at 114. Appellants have failed to acknowledge or discuss this point.

- 4 -

was to "conduct a new evidentiary hearing to determine whether Appellants stand *in loco parentis* under 23 Pa.C.S.A. § 2512(a)(3) to file a petition to terminate [Mother's] parental rights." Judgment Order, 7/24/2018, at 2. Our directive remanding this matter did not suggest that waiver of the issue of standing was before this Court on appeal. Accordingly, we conclude that Appellants' claim of waiver is not properly before us.

We next address whether the trial court properly concluded that Appellants lack standing to file for involuntary termination of Mother's parental rights. Appellants assert that they obtained *in loco parentis* standing when Child was returned to them by maternal grandmother after Mother was reincarcerated. Appellants contend that Mother did not make an adequate attempt to reunite with Child after her release from prison, and Mother's inaction permits an inference that she agreed to permanent placement of Child with Appellants.

Our standard of review over questions of *in loco parentis* standing is well settled. "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." **K.W. v. S.L.**, 157 A.3d 498, 504 (Pa. Super. 2017) (citation omitted).

Section 2512(a) of the Adoption Act addresses who may file a petition to terminate parental rights of a child under the age of 18 years. Pertinent to this case, subsection (3) permits the filing of a termination petition by an

"individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531[.]" 23 Pa.C.S.A. § 2512(a)(3).

The term *in loco parentis* literally means "in the place of a parent." **See K.W.**, 157 A.3d at 504. Our Supreme Court has long explained, "The phrase '*in loco parentis*' refers to a person who puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." **Commonwealth ex rel. Morgan v. Smith**, 565, 241 A.2d 531, 533 (Pa. 1968). "The status of '*in loco parentis*' embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." **Id**. Importantly, *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent. **See K.W.**, 157 A.3d at 505. "The assumption of parental status must be predicated on the natural parents' agreement to the permanent placement of the child." **In re: B.L.J., Jr.**, 930 A.2d 1068, 1073 (Pa. Super. 2007).

At the conclusion of the evidentiary hearing, the trial court determined that Appellants failed to establish that Mother had acquiesced to either the permanent placement of Child with maternal grandmother or with Appellants. Further, the trial court observed that Appellants failed to join or serve natural father and did not present any evidence to establish that father consented to

Child's placement with either maternal grandmother or Appellants. Upon review, we agree.

Our review reveals that the trial court held an evidentiary hearing on January 8, 2021, as direct by this Court. At the hearing, Appellants presented testimony from Husband and Wife and no other testimony. At the conclusion of the hearing, the trial court made the following relevant findings:

> 2. [Child] was born when [M]other was incarcerated at the state correctional institute of Cambridge Springs.
>
> 3. The state correctional facility facilitated [C]hild's placement with [Appellants] during the period of [M]other's incarceration.
>
> 4. At all times it was understood by all parties [C]hild would be returned to [M]other upon her release, which in fact occurred in September of 2013.
>
> 5. Approximately seven months later, when [C]hild was approximately two and a half years old, the maternal grandmother contacted [Appellants] and asked "can you take care of him" referring to [Child].
>
> 6. There is no evidence that at that time [M]other was aware that the grandmother had placed [C]hild anywhere.
>
> * * *
>
> 9. When asked why in 2016 [Appellants] began the [involuntary termination] process, [Husband's] answer was not to finalize the agreement of permanency. [Rather, Husband's] answer was that he believed the time limits had passed for "abandonment".
>
> 10. On or about April 26, 2017 [M]other was released and immediately upon appeared at [Appellants'] house requesting the return of [C]hild.
>
> 11. The [c]ourt finds there is no evidence that [M]other's placement of [C]hild with grandmother on the second occasion was with the idea of permanency, and therefore there is no evidence that grandmother established in loco parentis status.

12. The [c]ourt finds no evidence that grandmother's placement of [C]hild on the second occasion with [Appellants] was with consent, permission or knowledge of [M]other.

13. The [c]ourt finds no evidence of record that the grandmother's intent on the second placement was to make it a permanent placement, as opposed to taking care of [C]hild until [Mother] had been released from jail. The record is silent on that issue.

N.T., 1/8/21, at 112-114.

These findings are supported by the record. There was no evidence presented to suggest that Mother's placement of Child with his grandmother upon Mother's reincarceration was intended to be permanent. Regarding the second time Appellants began caring for Child, which was during Mother's reincarceration, it is undisputed that it was Child's maternal grandmother, and not Mother, who placed Child with Appellants.

Further, the record is devoid of evidence to suggest that Mother knew of, or acquiesced to, Child's second placement with Appellants. Rather, the concept that Mother acquiesced to the placement and discharged her parental duties is contradicted by the undisputed fact that immediately upon her release from incarceration she appeared at Appellants' home seeking the return of Child.

Indeed, Husband's testimony reflects that Mother had no contact with Appellants in the "four or five years" prior to her release from incarceration. N.T., 1/8/21, at 38-39. Husband's testimony belies any notion that Mother and Appellants discussed the second placement of Child. These facts support

the trial court's conclusion that Appellants failed to establish that Mother agreed to the permanent placement of Child during her period of reincarceration. Accordingly, we discern no error by the trial court in determining that Appellants lacked *in loco parentis* standing. Therefore, the trial court did not err in dismissing the petitions to involuntarily terminate Mother's parental rights to Child.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2021