J-S30001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SEAN J. HAMSKI | : | IN THE SUPERIOR COURT |
| | : | OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| ASHLEY M. JONES | : | |
| _____ | : | |
| MAUREEN M. WHITE | : | |
| | : | No. 436 EDA 2023 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY M. JONES AND SEAN J. | : | |
| HAMSKI | : | |
| | : | |
| | : | |
| APPEAL OF: ASHLEY M. JONES | : | |

Appeal from the Order Entered January 25, 2023
In the Court of Common Pleas of Philadelphia County Family Court
Division at No(s):  0C0700119,
XC0700119

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 8, 2023**

Ashley M. Jones ("Mother") appeals, *pro se*, from the order dated and entered January 25, 2023, awarding sole legal and primary physical custody of her sons, Ni.M.H, born in December 2006, and Na.M.H., born in November 2009 (collectively, "Children"), to Maureen M. White ("Paternal Grandmother").  The order awarded Mother partial physical custody as agreed

and arranged with Paternal Grandmother and at the Children's discretion.[1]  In so awarding, the order overruled Mother's preliminary objections and found that Paternal Grandmother has standing as a party *in loco parentis* to the Children pursuant to 23 Pa.C.S. § 5324(2).  After review, we affirm.

The trial court aptly recounted the factual and procedural history in its order as follows:

> This case has a long docket history and these [C]hildren have spent most of their childhoods in court proceedings in both Dependency and Domestic Relations Court.  Between 2007 and 2016, there were multiple court filings each year and each of the parents had periods of supervised custody over the years as they each struggled with domestic violence, abuse and neglect allegations, and substance use disorders.  The Children were previously adjudicated dependent on June 22, 2016, and placed in the care of Paternal Grandmother as neither parent was determined to be fit to care for them at that time.  The Children were then placed into the primary custody of Father by order of March 15, 2017, and the dependency case was closed.
>
> On February 5, 2019, Father was awarded primary physical custody and Mother was awarded partial physical custody, and Mother and Father shared physical custody during the summer.  However, less than two months later, on March 27, 2019, Mother's partial physical custody was again ordered to be supervised.  Mother filed [a] petition to modify custody shortly thereafter on July 18, 2019.[2]
>
> In 2019, Father had been living with the Children at [Paternal Grandmother's residence].  Father moved out of the residence at some point in 2019[,] and left the Children in the care of Paternal

_____

[1] Father, Sean Hamski ("Father"), was additionally awarded partial physical custody as agreed and arranged with Paternal Grandmother and at the discretion of the Children.  Father did not file a separate appeal and did not participate in the instant appeal.

[2] Mother sought primary physical custody.  Petition to Modify, 7/18/19, at ¶ 6.

Grandmother, as he once again struggled with a substance use disorder. Paternal Grandmother then filed for custody on September 2, 2020,[3] after the Children had been living with her for over a year without Father or Mother present. During that time, Paternal Grandmother was the sole caregiver for the Children, performing all parental duties.

Judge Twardy issued a temporary order on November 22, 2021, awarding Paternal Grandmother sole legal and primary physical custody of [Ni.M.H.], and Mother primary custody of [Na.M.H], separating the two brothers, but without making a determination on standing or ruling on the preliminary objections. This was after he interviewed the Children where [Na.M.H.] expressed he wanted to try to live with his [M]other. The case was not concluded and was continued to another date. Judge Twardy then ended his term in Family Court without the trial being completed.

. . .

On September 6, 2022, parties and counsel appeared for a hearing on Mother's petition to modify custody filed on July 18, 2019, Paternal Grandmother's complaint for custody filed on September 2, 2020, Mother's petition for contempt filed on April 9, 2021,[4] and preliminary objections filed by Mother on April 28, 2021, on the issue of standing for Paternal Grandmother. The time slot was not sufficient for a full trial. This court interviewed both [C]hildren and provided detailed feedback to the parties and counsel in the hope of providing a resolution in light of the Children's ages and preferences.

Mother initially tried to keep [Na.M.H.] from testifying and did not bring him to court on that date, in violation of the order for him to appear. Mother claimed the child had a mental health crisis and should not be permitted to testify. This court contacted the child by telephone, and he informed the court he did wish to testify. He was then brought to court by another relative and [] informed this judge he wished to be reunited with his brother and Paternal Grandmother as a result of treatment he received by []

_____

[3] Paternal Grandmother sought sole legal and primary physical custody. **See** Complaint for Custody, 9/2/20, at ¶ 13. On April 28, 2021, Mother filed preliminary objections challenging Paternal Grandmother's standing.

[4] Mother subsequently withdrew this petition on January 5, 2023. N.T., 1/5/23, at 5.

Mother's partner and that he did not feel safe or welcomed in that residence.[5]

Despite the detailed feedback from the interviews of the Children, where both [C]hildren expressed well-reasoned preferences to be in the custody of their [P]aternal [G]randmother, the parties were not able to resolve any issues and this matter was then scheduled for a semi-protracted trial on January 5, 2023, and this court issued a temporary order on the basis of the testimony of the Children.

Order, 1/25/23, at 1-3 (cleaned up); *see also* Trial Court Opinion, 3/24/23, at 2-9.

The court then conducted a hearing on January 5, 2023. Mother and Paternal Grandmother were each present and represented by counsel, and testified on their own behalf.[6] The court additionally spoke with both Children, *in camera*, without counsel present. Notably, the Children, then sixteen and thirteen years old, each acknowledged a tenuous relationship with Mother and

---

[5] Notably, Mother resided with her husband and their three young sons. N.T., 1/5/23, at 6; N.T., 9/6/22 (Children's sealed testimony), at 57. Na.M.H. testified that he was scared of Mother's husband, who would get in his face, scream at and threaten him, and tell him he was not welcome and kick him out of the house. *See* N.T., 9/6/22 (Children's sealed testimony), at 61-66. Ni.M.H. confirmed that Mother's husband was abusive. *See* N.T., 1/5/23 (Children's sealed testimony), at 32; N.T., 9/6/22 (Children's sealed testimony), at 17-19. Na.M.H. additionally described unsanitary conditions in the household, where he was unable to sleep in his bed or shower for extended periods of time. *See* N.T., 9/6/22 (Children's sealed testimony), at 68-71. Na.M.H. explained that one of his younger brothers urinated on and put tomato sauce in his bed on separate occasions, as well as repeatedly smeared feces in the bathroom. As such, Na.M.H. slept on the floor and was unable to shower for several days until Mother cleaned up. *See id.*

[6] Father was not represented by counsel and did not appear at this hearing.

indicated their desire to remain with Paternal Grandmother. *See* N.T., 1/5/23 (Children's sealed testimony), at 1-34.

By order dated and entered January 25, 2023, the trial court granted in part and denied in part Mother's petition to modify and granted Paternal Grandmother's complaint for custody. Specifically, the court awarded Paternal Grandmother sole legal and primary physical custody of the Children. The court further awarded Mother partial physical custody as agreed and arranged with Paternal Grandmother and at the Children's discretion. In so doing, the court overruled Mother's preliminary objections and found that Paternal Grandmother has standing as a party *in loco parentis* to the Children pursuant to Section 5324(2). Similarly, the court concluded that Paternal Grandmother rebutted the presumption in favor of biological parents under Section 5327(b). The order then proceeded to analyze each custody factor pursuant to Section 5328(a). *See* Order, 1/25/23, at 4-11.

On February 23, 2023, Mother, *pro se*, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed its Rule 1925(a) opinion on March 24, 2023.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion when it overruled Mother's preliminary objections pursuant [to 23] Pa.C.S. § 5324 and § 5325 averring that Paternal Grandmother lack[ed] standing for any form of custody and its conclusion that

Paternal Grandmother stands *in loco parentis* to [the] Children despite lacking consent of the natural mother.[7]

2. Whether the trial court erred and/or abused its discretion by denying Mother's petition to modify custody for primary custody against the best interest of the Children, pursuant to 23 Pa.C.S. § 5328(a).

Mother's Brief at 6 (cleaned up; suggested answers omitted).[8], [9], [10]

_____

[7] We find that Section 5325 would not be applicable as Paternal Grandmother was seeking primary physical custody. **See** 23 Pa.C.S. § 5325 ("In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations….").

[8] As Mother does not challenge the trial court's finding regarding legal custody, we do not address it.

[9] Preliminarily, citing to Pennsylvania Rule of Appellate Procedure 2188, Paternal Grandmother argues that Mother's appeal should be dismissed as her brief was not filed with this Court in a timely manner. **See** Paternal Grandmother's Brief at 7-8; **see also** Pa.R.A.P. 2188 (stating, in part, "[i]f an appellant fails to file his … brief … within the time prescribed by these rules, or within the time as extended, an appellee may move for dismissal of the matter"). On June 15, 2023, one day after Mother's brief was due, Mother requested an extension of time to file same. By order of June 20, 2023, this Court denied Mother's request and directed Mother to file her late brief on or before June 21, 2023, or suffer dismissal of her appeal. Mother complied. As such, we decline to dismiss Mother's appeal for this reason.

[10] We additionally note with disapproval procedural deficiencies related to the organization of Mother's brief. Specifically, the argument section of Mother's brief is not separated by the issues raised with distinct headings. While Mother offers some form of what can be deemed sub-headings and/or separation within her first issue, these are inconsistent and not distinctive. **See** Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed"); **see**
*(Footnote Continued Next Page)*

We review custody orders for an abuse of discretion. *See R.L. v. M.A.*, 209 A.3d 391, 395 (Pa. Super. 2019). We will not find such an abuse merely because we would have reached a different conclusion. *See id.* Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *See id.*

Moreover, our scope of review is broad. *See id.* Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. *See S.C.B. v. J.S.B.*, 218 A.3d 905, 913 (Pa. Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. *See id.* We are not, however, bound by the trial court's deductions or inferences. *See id.* "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa.

---

*also* Pa.R.A.P. 2119(a) (stating, "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). However, as we discern the general issues raised and related arguments, we proceed with the merits of Mother's appeal.

Super. 2011) (quoting ***A.D. v. M.A.B.***, 989 A.2d 32, 35–36 (Pa. Super. 2010)). As we stated in ***King v. King***, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion…." ***Id.*** at 632 (quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005)).

With her first issue, Mother contests the trial court's overruling her preliminary objections and finding Paternal Grandmother had standing as a party who stood *in loco parentis* pursuant to Section 5324(2). ***See*** Mother's Brief at 14-16. Mother vehemently denies that she consented to Paternal Grandmother's custody of the Children. She suggests that, in fact, Paternal Grandmother illegally usurped her custodial rights to the Children, and insinuates that Father and Paternal Grandmother actively misled the court by not disclosing that Father no longer resided in the home with Paternal Grandmother and the Children. Mother further contends that she made numerous attempts to secure physical custody and/or visitation. ***See id.*** at 15-16.

As to the relevant standard and scope of review, we have stated, "[t]hreshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Raymond v. Raymond***, 279 A.3d 620, 627 (Pa. Super. 2022) (citation omitted).

Pursuant to 23 Pa.C.S. § 5324, the following may file an action for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands *in loco parentis* to the child.

(3) A grandparent of the child who is not *in loco parentis* to the child:

> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

> (ii) who assumes or is willing to assume responsibility for the child; and

> (iii) when one of the following conditions is met:

> > (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

> > (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

> > (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324 (italics added).

For purposes of the instant matter, we focus on Section 5324(2) and *in loco parentis*. On this topic, this Court has stated:

> "The term *in loco parentis* literally means 'in the place of a parent.'" ***Peters v. Costello***, … 891 A.2d 705, 710 ([Pa.] 2005) (citing Black's Law Dictionary, 791 (7th Ed. 1991)). A person stands *in loco parentis* with respect to a child when he or she "assum[es] the obligations incident to the parental relationship without going through the formality of a legal adoption. The

- 9 -

status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." **Id.** (quoting **T.B. v. L.R.M.**, … 786 A.2d 913, 916-17 ([Pa.] 2001)). Critical to our discussion here, "*in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of[,] the wishes of a parent." **E.W. v. T.S.**, 916 A.2d 1197, 1205 (Pa. [Super.] 2007) (citing **T.B.**, **supra**).

**K.W. v. S.L.**, 157 A.3d 498, 504-05 (Pa. Super. 2017).

Moreover,

while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

**T.B.**, 786 A.2d at 917 (citation omitted).

In overruling Mother's preliminary objections and finding that Paternal Grandmother had standing as a party *in loco parentis* to the Children, the trial court highlighted Paternal Grandmother's long-standing care of the Children, both with and without Father. The court stated:

The preliminary objections filed by Mother on April 28, 2021[,] are overruled. This court finds that Paternal Grandmother has standing as a party who has been *in loco parentis* to the Children pursuant to 23 Pa.C.S.[] Section 5324(2). Paternal Grandmother acted in the role of a parent to both [C]hildren with the consent of the Children's father when [he] voluntarily left the Children in her care and vacated her home in 2019, which was one year prior to the filing of her complaint. Mother's preliminary objections aver that she did not give permission for the Children to live with Paternal Grandmother without Father present. However, the permission/consent of both parents is not required to determine

- 10 -

that a party has standing where the third party has performed parental duties with the consent and acquiescence of at least one parent. … The record and credible testimony from Paternal Grandmother and the Children strongly support this finding that Paternal Grandmother has been a parental caregiver performing these duties for many years. She has taken a primary role with respect to education, medical and all other caregiving duties. As of the time of trial, the Children had been living in the primary custody of Paternal Grandmother for over four years.

Order, 1/25/23, at 3 (cleaned up).

As the court further explained in its Rule 1925(a) opinion:

This court found [Paternal Grandmother] to have standing pursuant to 23 Pa.C.S. § 5324(2) as a third party who stands *[in loco parentis]* to the Children as she has been the primary caregiver for both [C]hildren continuously and exclusively for a full year as of the time of her filing. [Paternal Grandmother] had solely performed all parental responsibilities for the Children including physician visits, dental care, schoolwork, therapy appointments, cooking, housing and financially supporting the Children from the summer of 2019 to the time of her filing in September 2020.

Prior to 2019, [Paternal Grandmother] had been a court-ordered kinship caregiver through the dependency case involving the children in 2016. [Paternal Grandmother] also testified credibly, as confirmed by both [C]hildren, that they had lived with [Paternal Grandmother] for most of their lives. In 2019, [Father] consented to her acting *in loco parentis* when he, as the parent with primary physical custody, left the Children in the sole care of [Paternal Grandmother] and moved away from the Children. … In 2019[,] when [Father] left the Children in the care of [Paternal Grandmother], [Mother] only had supervised physical custody as set forth in the final order of March 22, 2019. Even after [Mother] filed for expedited relief on August 19, 2019, alleging she only had "sporadic contact" with the Children, the court did not lift the provision for [Mother]'s custody to be supervised in the order of November 15, 2019. [Mother]'s standing issue raised on appeal specifically turns on the question of her consent to [Paternal Grandmother's] acting as a parent to the Children. It is uncontested that [Paternal Grandmother] had in fact acted in the place of a parent to both [C]hildren over the years. Here, [Father] co-parented the Children with [Paternal Grandmother] when he

- 11 -

was residing in her home and [Paternal Grandmother] parented them once [Father] moved out of her home. [Mother] claimed in her preliminary objections she did not consent to this. However, grandparents and other third parties have been found to be *in loco parentis* where that relationship began with the consent or acquiescence of a parent. Similar to the present case, in both **M.J.S. v. B.B.**[, 172 A.3d 651 (Pa. Super. 2017),] and **McDonel v. Sohn**, [762 A.2d 1101 (Pa. Super. 2000),] third parties were found to have stood *in loco parentis* where the third party and one of the parents together co-parented the children during a period of their lives.

. . .

[Paternal Grandmother] in the present case had assumed the role of parent in the Children's lives. [Paternal Grandmother] was the one who attended the daily needs of the Children consistently and exclusively from the summer of 2019 until the filing of her complaint in September 2020. [Father] was absent as he left both [C]hildren in her care. [Mother] petitioned the court in August 2019, as she only had "sporadic contact" with the Children, and the court denied her petition for expedited relief. Both parents have consented to [Paternal Grandmother]'s role by their action and inaction over the years as [Paternal Grandmother] has had to take on increased responsibility for the Children due to [Father]'s substance use disorder and the parents' increasing disengagement and mistreatment of the Children over the years as the procedural history in this case illustrates. Moreover, [Mother] has failed to consistently exercise even the very limited partial custody she had pursuant to this court's [] temporary order for partial physical custody of Na.M.H. entered on September 6, 2022. [Mother] only exercised one of her weekend visits between September 2022 and January 2023 because her partner [] denied the child entry to his home where [Mother] resides.[11]

Trial Court Opinion, 3/24/23, at 20-22 (cleaned up).

With this, we agree. Upon review, the record supports the trial court's

determination as to Paternal Grandmother's standing pursuant to Section

---

[11] Na.M.H. refused to visit with Mother thereafter. **See** N.T., 1/5/23, at 65-70.

- 12 -

5324(2) as a party *in loco parentis* to the Children. In ***McDonel***, this Court affirmed the *in loco parentis* standing of a maternal aunt and uncle, over the father's objection, where they had extensive involvement in the life of the child. ***McDonel***, 762 A.2d at 1105-06. Despite the father's being unaware of the maternal aunt and uncle's involvement, we rejected his argument that he therefore did not consent to their role, as he failed to take actions which prevented their relationship from developing. ***Id.*** at 1106.

Similarly, in ***M.J.S.***, this Court also affirmed that a grandmother had *in loco parentis* status where she lived with the mother and child for five years and "either shared or assumed parenting responsibility for the entirety of the child's life" and the child's father did not oppose her assumption of parental duties at any point. ***M.J.S.***, 172 A.3d at 656-67. We reasoned:

> Stated plainly, [the f]ather failed to oppose [the g]randmother's assumption of parental duties. Instead, he allowed [the g]randmother to share the parental responsibilities with [the m]other. [The f]ather not only declined to protest [the g]randmother's emergent role, he did not attempt to intercede in [the g]randmother's assumption of parental duties, and he failed to perform any parental obligations beyond exercising partial physical custody. Through his own inaction, [the f]ather acquiesced to the development of the *in loco parentis* relationship between [the g]randmother and [the child].

***Id.*** at 657.

In the case *sub judice*, analogous to ***McDonel*** and ***M.J.S.***, Mother acquiesced to the development of Paternal Grandmother's relationship with the Children. The record establishes that Paternal Grandmother enjoyed a long-standing, care-giving relationship with the Children which included

- 13 -

shared and/or assumed parenting responsibilities. *See* N.T., 1/5/23, at 78-80; N.T., 9/6/22 (Children's sealed testimony), at 29, 32. Mother, however, failed to oppose Paternal Grandmother's assumption of parental duties and the development of an *in loco parentis* relationship. In fact, Mother does not dispute shared responsibilities between Father and Paternal Grandmother. Rather, Mother's argument is that she was unaware that Father was no longer living in the residence with Paternal Grandmother and the Children. Thus, she asserts any assumption of parental duties was in defiance of her wishes and without her consent. Notwithstanding, Mother's inaction belies any such argument. Moreover, and significantly, given Paternal Grandmother's enduring relationship with the Children, she was a "stabilizing force" and a source of consistency for the Children. *M.J.S.*, 172 A.3d at 657. As such, Paternal Grandmother stood *in loco parentis* to the Children pursuant to Section 5324(2).[12]

To the extent Mother relies on *B.A. v. E.E.*, 741 A.2d 1227 (Pa. 1999), to support her assertion of lack of consent, we find *B.A.* inapposite. In *B.A.*, our Supreme Court found prospective adoptive parents failed to attain *in loco parentis* standing where, despite the mother's consent, their care and control of the child began in defiance of the express wishes of the father, who refused to consent and filed for custody shortly after the child's birth and placement.

---

[12] Even if Paternal Grandmother failed to attain *in loco parentis* status, we would determine that she had standing pursuant to Section 5324(3)(i-iii)(B), given the abuse and neglect in Mother's household and Father's substance abuse.

*Id.* at 1228. Here, however, as stated above, Mother did not oppose Paternal Grandmother's assumption of parental duties. Consequently, Mother's challenge to Paternal Grandmother's standing fails.

Having found the trial court did not err in concluding that Paternal Grandmother had standing as a party who stood *in loco parentis* pursuant to Section 5324(2), we next review Mother's second issue, her substantive challenge to the trial court's custody order. Significantly, "[w]hen a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa. Super. 2017). To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* (citation omitted). The statutorily required factors are as follows:

> **§ 5328. Factors to consider when awarding custody.**
>
> **(a) Factors.--** In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

> A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D.**[, 96 A.3d at 401]. **See also** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

**R.L.**, 209 A.3d at 395.

Further, as it relates to parents and third parties, we have further explained:

> The parent has a *prima facie* right to custody, "which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party." **V.B. v. J.E.B.**, 55 A.3d 1193, 1199 (Pa. Super. 2012) (quoting **Charles v. Stehlik,** … 744 A.2d 1255, 1258 ([Pa.] 2000)). Section 5327 of the Custody Act pertains to cases "concerning primary physical custody" and provides that, "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). This Court has defined clear and convincing evidence "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **M.J.S.**[, 172 A.3d at 660] (citations and internal quotation marks omitted).

> Accordingly, "even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side." **V.B.**, 55 A.3d at 1199 (quoting **Charles,** 744 A.2d at 1258). When making a decision to award **primary** physical custody to a

nonparent, the trial court must "hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *Id.* (quoting **McDonel**[, 762 A.2d at 1107]).

These principles do not preclude an award of custody to the nonparent but simply instruct the trial court that the nonparent bears the burden of production and the burden of persuasion and that the nonparent's burden is heavy. *Jones v. Jones*, 884 A.2d 915, 918 (Pa. Super. 2005). It is well settled, "[w]hile this Commonwealth places great importance on biological ties, it does not do so to the extent that the biological parent's right to custody will trump the best interests of the child. In all custody matters, our primary concern is, and must continue to be, the well-being of the most fragile human participant—that of the minor child." *Charles*, 744 A.2d at 1259. "Once it is established that someone who is not the biological parent is *in loco parentis*, that person **does not need to establish that the biological parent is unfit**, but instead must establish by clear and convincing evidence that it is in the best interests of the children to maintain that relationship or be with that person." *Jones*, 884 A.2d at 917 (emphasis in original).

*R.L.*, 209 A.3d at 396 (emphasis in original).[13]

Instantly, the trial court addressed and analyzed the custody factors pursuant to Section 5328(a). *See* Order, 1/25/23, at 4-11. The court determined that Section 5328(a)(1), (2), (2.1), (3), (4), (6), (7), (9), and (10) strongly favor Paternal Grandmother and (8), (11), and (14) favor Paternal Grandmother. The court found Section 5328(a)(5), (12), (13), and (15) are neutral. Most critical to the court, however, was Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgement. The court noted, "[t]his factor strongly favors Paternal

_____

[13] Mother does not oppose the trial court's finding that Paternal Grandmother rebutted the presumption in favor of biological parents in Section 5327(b).

Grandmother and is the most significant factor [in] this case in light of the Children's ages." Order, 1/25/23, at 6 (unnecessary capitalization omitted).

Mother assails the court's determinations as to Section 5328(a)(1), (2), (3), (4), (6), (8), (9), (10), (14), and (15). As to these factors, the trial court stated:

> 1. WHICH PARTY IS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT CONTACT AND CONTINUING CONTACT BETWEEN THE CHILD AND ANOTHER PARTY.
>
> This factor strongly favors Paternal Grandmother. She has not denied the Children access and communication with their [M]other or [F]ather. In contrast, Mother denied [Na.M.H.] access to his phone and other electronics to prevent him from communicating with his brother and Paternal Grandmother and cut him off from contact during the time she had [him] in her primary physical custody. This resulted in the expedited relief and contempt petitions.
>
> 2. THE PRESENT OR PAST ABUSE BY A PARTY [AND] WHETHER THERE IS A CONTINUED RISK OF HARM TO THE CHILD OR AN ABUSED PARTY.
>
> This factor strongly favors Paternal Grandmother based upon past abuse. See 2.1 below.
>
> 2.1. THE INFORMATION SET FORTH IN SECTION 5329.1(A)(1) AND (2) (RELATING TO CONSIDERATION OF CHILD ABUSE AND INVOLVEMENT WITH PROTECTIVE SERVICES).
>
> While there are no active open investigations involving the Department of Human Services currently, the Children have been seriously impacted by their history in past cases. Now that they are teenagers, this has been apparent to each of them. Based upon this history, this factor strongly favors Paternal Grandmother. Mother's and Father's prior history and involvement with the Department of Human Services [("DHS")], resulted in the removal of the Children from their care in 2016[,] based upon valid reports of child abuse and neglect. An order of protective custody removed the Children from the care of the parents and placed the Children with the Paternal Grandmother

- 19 -

on June 2, 2016. Previously in 2012 and 2013, DHS was involved with the Children due to domestic violence between Mother and Father.

3. THE PARENTAL DUTIES PERFORMED BY EACH PARTY ON BEHALF OF THE CHILD.

This factor strongly favors Paternal Grandmother. She has been the most consistent caregiver in the lives of the Children as both parents struggled through the majority of the Children's lives. This was supported by credible testimony from [Ni.M.H].

4. THE NEED FOR STABILITY AND CONTINUITY IN THE CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY LIFE.

This factor strong[ly] favors Paternal Grandmother. Neither Mother nor Father has been able to offer the Children any stability. Paternal Grandmother has consistently been involved in the Children's lives and provided them with stability and continuity that they could not get from their parents. With respect to education, Mother claims she can better provide for education because … [Na.M.H.] was in in[-]person school when he was in her care[,] and both [C]hildren are now in virtual school based upon the problems they each faced[,] testified to by Paternal Grandmother and the Children. However, this in [*sic*] disingenuous because [Ni.M.H.] is suffering with limited options for his education as a direct result of actions Mother took to expressly interfere with his ability to obtain an education. As detailed below, Mother testified against [Ni.M.H.] at the expulsion hearing for New Foundations School and [] took action to interfere with his acceptance to Girard College.

. . .

6. THE CHILD'S SIBLING[] RELATIONSHIPS.

This factor strongly favors Paternal Grandmother having primary custody of both [Ni.M.H.] and [Na.M.H]. The boys are bonded to each other as siblings and other than the brief period when they were separated as a result of Judge Twardy's temporary custody order [*sic*]. Both [C]hildren testified that the temporary arrangement that separated then [*sic*] was difficult and not in their best interests.

[Na.M.H.] previously said he was having conflicts with his brother [Ni.M.H.] and Paternal Grandmother. He said [he] got mad at

them and he made up stuff to get back at them. He admitted that he lied to Judge Twardy when he told him that his [P]aternal [G]randmother was mistreating him and not feeding him enough. He said he and [Ni.M.H.] have been getting along much better now when he is there for the weekends and that he wants to go home. He stated home for him has always been Paternal Grandmother's residence.

[Ni.M.H.] and [Na.M.H.] have strained relationships with their three younger brothers, especially [Na.M.H.], for the reasons set forth in number 7 below.

. . .

8. THE ATTEMPTS OF A PARENT TO TURN THE CHILD AGAINST THE OTHER.

This factor favors Paternal Grandmother. Mother and her partner [] have attempted to alienate [Na.M.H.] against Paternal Grandmother by regularly speaking negatively against Father and Paternal Grandmother to [Na.M.H.] and denying him communication with them. However, this has resulted in [Na.M.H.'s] not wanting to remain in Mother's household rather than turning him against Paternal Grandmother.

[9]. WHICH PARTY IS MORE LIKELY TO MAINTAIN A LOVING, STABLE, CONSISTENT AND NURTURING RELATIONSHIP WITH THE CHILD ADEQUATEFOR THE CHILD'S EMOTIONAL NEEDS.

This factor strongly favors Paternal Grandmother. Paternal Grandmother has been the most consistent caregiver throughout the Children's lives. For all the reasons set forth herein, Mother has acted in ways that are extremely damaging to the Children's emotional needs.

[10]. WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF THE CHILD.

This factor strongly favors Paternal Grandmother. Mother has actively interfered with the education of [Ni.M.H.] in a way that has limited his options. This court finds Mother's actions and inactions warrant an award of sole legal custody to Paternal Grandmother. For all the reasons set forth herein, Mother has acted in ways that are extremely damaging to the Children's emotional needs.

13. THE HISTORY OF DRUG OR ALCOHOL ABUSE BY A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.

This factor favors Paternal Grandmother based on the history of the parents. Father continues to struggle with substance use disorder but is seeking help now in Florida.

14. THE MENTAL AND PHYSICAL CONDITION OF A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.

This factor favors neither party. Mother testified that Paternal Grandmother has physical impairments and disabilities that impact her ability to care for the Children. However, this was not credible based upon Paternal Grandmother's testimony and the testimony of the Children.

Order, 1/25/23, at 4-11 (cleaned up).

Specifically, as to Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, and (8), the attempts of a parent to turn the child against the other, Mother contends that Paternal Grandmother has withheld the Children, specifically Na.M.H., from her by failing to transport Na.M.H. for Mother's partial physical custody. *See* Mother's Brief at 19, 23. As to Section 5328(a)(2), the present or past abuse by a party and whether there is a continued risk of harm to the child or an abused party, and (2.1), the information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services), Mother indicates no existing record relating to either her or her husband is in a statewide abuse database and that all DHS reports concerning her and her fiancé were unfounded. *See id.* at 19-20. As to Section 5328(a)(3), the parental duties performed by each party on behalf of the child; (4), the need for stability and

continuity in the child's education, family life and community life; (9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs; and (10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, Mother maintains that Paternal Grandmother neglects the Children's educational, medical, dental, and mental health needs. Conversely, she contends that she consistently provides for such needs, as demonstrated by Na.M.H.'s time in her primary physical custody. *See id.* at 20-27. As to Section 5328(a)(6), the child's sibling relationships, Mother references the Children's three younger half-siblings who reside with her. *See id.* at 23. As to Section 5328(a)(13), the history of drug or alcohol abuse by a party or member of a party's household, Mother states that she has not failed any drug tests, while recognizing Father's "long history of drug abuse." *See id.* at 27. Finally, as to Section 5328(a)(14), the mental and physical condition of a party or member of a party's household, Mother asserts that Paternal Grandmother has a medical condition. *See id.* at 27-28.

We, however, conclude that any assertion of error is waived for failure to address this issue in a meaningful way with citation to pertinent legal authority and/or the record. *See* Pa.R.A.P. 2119(c)-(d); *see also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the

issue in any other meaningful fashion capable of review, that claim is waived."); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review). Mother provides a rambling, repetitive argument that each of these factors should be determined to be in her favor without any citation to relevant law other than regurgitating the statutory language and, critically, without any citation to the record. *See* Mother's Brief at 19-28.

Notwithstanding, even if not waived, Mother's claim fails. As stated above, with regard to the custody factors, we have stated that the trial court is required to consider all such factors. *A.V.*, 87 A.3d at 822-23. Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M.*, 63 A.3d 331 at 339. As we stated in *M.J.M.*,

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.** *See A.D.*[, 989 A.2d at 35-36] ("In reviewing a custody order ... our role does not include making independent factual determinations…. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*M.J.M.*, 63 A.3d 331 at 339 (emphasis added). However, while not controlling, a child's wishes are of critical consideration. *McMillen v.*

*McMillen*, 602 A.2d 845, 847 (Pa. 1992) (stating, "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must he carefully considered in determining the child's best interest").

As we construe Mother's claim, we interpret the issue raised at its core to be a dispute as to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Mother, in essence, questions the trial court's conclusions and assessments and seeks this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. We reiterate, "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion…." *King*, 889 A.2d at 632. After a thorough review of the record, we find no abuse of discretion. Further, to the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. *See M.J.M.*, 63 A.3d at 339.

Here, the trial court analyzed and addressed each of the custody factors pursuant to Section 5328(a). *See* Trial Court Opinion, 1/25/23, at 4-11. After careful review of the record, and in deference to the trial court's determinations as to credibility and weight of the evidence, we conclude that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record. We, therefore, will not disturb them. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/8/2023